JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a California non-profit association,

           Plaintiff,

     v.

FLEETWOOD FIBRE LLC, a California limited liability company; GOLDEN WEST PACKAGING GROUP LLC, a California limited liability company,

           Defendants.

Case No.: 2:24-cv-09514-CV (PDx)

**CONSENT DECREE**

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, FLEETWOOD FIBRE LLC and GOLDEN WEST PACKAGING GROUP LLC ("Defendants") own and operate an industrial facility

1

located at 15250 Don Julian Rd., City of Industry, CA 91745 ("The Facility") under
Waste Discharger Identification number WDID 4 19I002425;

WHEREAS, the Facility's industrial activities consist of the design and
manufacture of custom packaging, cartons, and paper and cardboard based retail
displays. The Facility is categorized under Standard Industrial Classification Codes
("SIC") 2653 covering Corrugated and Solid Fiber Boxes, and 2657, covering Folder
Paperboard Boxes, Including Sanitary.

WHEREAS, storm water discharges associated with industrial activity at the
Facility are regulated by the National Pollutant Discharge Elimination System
("NPDES") General Permit No. CAS000001 [State Water Resources Control Board],
Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ
and 2018-0028-DWQ incorporing: 1) Federal Sufficiently Sensitive Test Method
Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3)
Statewide Compliance Options Incentivizing On-Site or Regional Storm Water
Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal
Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or
"CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, Defendants' operations at the Facility result in discharges of
pollutants into waters of the United States and are regulated by the Clean Water Act
Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, the General Permit requires all permittees, including Defendants,
to comply with, inter alia, the following mandates: (1) develop and implement a
storm water pollution prevention plan and a storm water monitoring implementation

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version,
regardless of whether such changes are the result of amendments, revisions, reissuance, or similar
modification of material terms. Any reference in this Consent Decree to specific sections or
subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent
version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the
current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split
into a new §XI.B.6.c and §XI.B.6.d.

plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 24, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendants, their registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on November 1, 2024, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:24-cv-09514-CV (PDx) ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including San Jose Creek, San Gabriel River, Alamitos Bay, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS,** Defendants deny all allegations set forth in the 60-Day Notice Letter and the Complaint.

**WHEREAS**, Plaintiff and Defendants (each a "Party" and collectively, "Settling Parties" or "Parties") without either adjudication of LA Waterkeeper's claims or any admission by Defendants of any alleged violation, believe that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions

appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**I.     OBJECTIVES**

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These

objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires upon the earlier of the Federal Agencies' non-objection to the Consent Decree or forty-five (45) calendar days after receipt by the Federal Agencies ("Agency Review Period Expiration"). Receipt will be evidenced by certified return receipts copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.      <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.      <u>Entry of Consent Decree</u>. Within five (5) business days of the Agency Review Period Expiration, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by all the Parties.

h.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.    "Forecasted Rain Event" means a forecasted rain event with fifty percent (50%) or greater chance of producing 0.1 inches over a

calendar day as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Industry, CA 91745"[2].

j.     "MIP" means a Monitoring Implementation Plan.

k.     "PPT" means Pollution Prevention Team.

l.     "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.     "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.     "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.     "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.     "SWPPP" means a Storm Water Pollution Prevention Plan.

q.     "Term" means the period between the Effective Date and the "Termination Date."

r.     "Termination Date" means the latest of:

   i.     June 30 following two (2) years from the Effective Date;

   ii.     seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the date in Paragraph 11.r.i. above ; or

   iii.     seven (7) days from Defendants' completion of all payments.

---

[2] https://forecast.weather.gov/MapClick.php?lat=34.0156&lon=-117.9528

s.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    Non-Storm Water Discharge Prohibition. Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    Current and Additional Best Management Practices. At all times during the Term, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to: (1) achieve BAT/BCT standards; and (2) comply with the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.    Rain Gauge/Sensor. Defendants shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by an event outside of Defendants' control.

15. <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendants shall develop and implement the following BMPs at the Facility:

    a.    Patch, pave, or otherwise resurface areas of degraded pavement or asphalt, throughout the Facility that adversely impact storm water quality;

    b.    Implement a sweeping program that includes mechanical sweeping using a KV601 Billy Goat or equivalent machine on all paved areas at least once per month outside of the Wet Season, and daily during the Wet Season, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

    c.    Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials in storm water discharged from the Facility, at all stormwater conveyance inlets at the Facility leading to San Jose Creek, and configure such wattles/filters/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations, unless such new wattles/filters/filtration socks were employed at the Facility between September 15, 2024 and the Effective Date. Defendants shall, thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th, beginning in 2025;

    d.    During each Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the

wattles/filters/socks are not sufficiently reducing pollutant concentrations;

e.    Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facility;

f.    Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

g.    Institute an equipment and vehicle maintenance program that ensures:

    i.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

    iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground; and

h.    Within fourteen (14) days of the deadline to implement the above BMPs, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

**B.    SAMPLING AT THE FACILITY**

16.    Defendants shall develop a monitoring program consistent with the General Permit. During the Term, Defendants shall collect samples of storm water discharge from each Discharge Point at the Facility from at least four (4) Qualifying Storm Events, including, at minimum, the first two (2) Qualifying Storm Event during the first half of the Reporting Year and the first two (2) Qualifying Storm Event during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If, due to lack of Qualifying Storm Events, fewer than two Qualifying Storm Events are collected in the first half of a Reporting Year, that shall be compensated by collecting an additional sample from an additional Qualifying Storm Event during the second half of a Reporting Year, until a total of four samples are collected for any Reporting Year occurring during the term of this Agreement. If Defendants would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendants did not collect samples because such rain event did not produce a discharge, then Defendants shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Defendants shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within fourteen (14) days of a written request for such records by LA Waterkeeper.

17.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions or otherwise in accordance with the General Permit.

19. <u>Detection Limit</u>. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20. <u>Reporting</u>. Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and within ten (10) business days of receiving the laboratory report with the results shall either (i) notify LA Waterkeeper by email of such upload to SMARTS or (ii) provide copies to LA Waterkeeper.

C. **REDUCTION OF POLLUTANTS IN DISCHARGES**

21. <u>Table 1 Numeric Limits</u>. Defendants shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels at or below those in Table 1.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous) 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous) 15 mg/L (annual) | NAL |
| Chemical Oxygen Demand ("COD") | 120 mg/L (annual) | NAL |
| pH | 6.5-8.5 SU | Basin Plan |

22. <u>Table 1 Exceedances</u>. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: where the concentration of the same pollutant in any two (2) storm water discharge samples at the Facility exceeds the applicable annual value or Basin Plan value in Table 1 within a Reporting Year; or where the concentration of any pollutant in one (1) storm water samples at Facility exceeds the

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for COD is either increased to 130 mg/L or decreased to 110 mg/L, such new NAL, and not 120 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein.

1   applicable instantaneous value in Table 1 within a Reporting Year. An Exceedance

2   shall trigger the requirements of Paragraph 23.

3        23.    Action Plan. As of the Entry Date, and for the remainder of the Term, if

4   (a) Defendants have an unauthorized non-storm water discharge in violation of

5   Paragraph 12, or (b) storm water samples demonstrate an Exceedance as defined

6   above for the Facility, Defendants shall prepare and submit to LA Waterkeeper a plan

7   for reducing and/or eliminating the relevant discharge of pollutants at the Facility,

8   and/or achieving compliance with the non-storm water discharge prohibition ("Action

9   Plan"). In no event shall Defendants be required to submit more than two Action

10  Plans for the same parameter at the same discharge point in any given Reporting

11  Year.  The complete Action Plan shall be submitted to LA Waterkeeper within thirty

12  (30) days of (a) the unauthorized non-storm water discharge, or (b) the receipt of the

13  laboratory report demonstrating the Exceedance, as applicable. However, an Action

14  Plan shall not be required when the BMPs for the applicable unauthorized non-storm

15  water discharge or the Exceedance for the same pollutant in the same drainage area

16  were addressed in a previous Action Plan in the same Reporting Year and such BMPs

17  were not yet implemented as of the date of the applicable unauthorized non-storm

18  water discharge or QSE sampling that led to the Exceedance.[4]

19            a.    Action Plan Requirements. Each complete Action Plan submitted

20                shall include at a minimum: (1) the identification of the

21                pollutant(s) discharged in excess of the numeric limit(s) and/or the

22                applicable unauthorized non-storm water discharge; (2) an

23                assessment of the source of each pollutant exceedance and/or

24                applicable unauthorized non-storm water discharge; (3) the

25

26  _____

27  [4] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is
    demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same
    Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the
28  same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous
    Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within fourteen (14) days of the deadline to implement BMPs in the Action Plan, Defendants shall confirm to LA Waterkeeper in writing, with photographs, where applicable, that any such BMPs have been implemented as set forth in the Action Plan.

b.   Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.   Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.   Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.   Treatment Systems. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more

effective filtration treatment of storm water prior to
discharge.

    iv.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or
eliminating existing BMPs, taking into account the age of
the BMPs involved or employed, the engineering aspect of
the application of various BMPs, and any adverse
environmental impact of the BMPs.

c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days
upon receipt of Defendants' complete Action Plan to provide
Defendants with comments. Within thirty (30) days of receiving
LA Waterkeeper's proposed revisions to an Action Plan,
Defendants shall consider each of LA Waterkeeper's
recommended revisions and accept them or justify in writing why
any comment is not incorporated. Action Plan(s) developed and
implemented pursuant to this Consent Decree are an obligation of
this Consent Decree. Any disputes as to the adequacy of an Action
Plan shall be resolved pursuant to the dispute resolution
provisions of this Consent Decree, set out in Section IV below.
Disputes regarding the adequacy of a particular BMP shall not
impact the schedule for implementing any other BMP set forth in
the Action Plan.

d.    Defendants shall revise the then-current SWPPP to reflect the
changes required by the Action Plan, as set forth in Paragraph 28
below.

e.    <u>Action Plan Payments</u>. Defendants shall pay Three Thousand
Dollars ($3,000.00) each time an Action Plan is submitted to LA
Waterkeeper. In no event shall more than two (2) Action Plan
Payments be required in a Reporting Year.

f.    Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.   VISUAL OBSERVATIONS**

24.   <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained personnel shall conduct visual observations during the Facility's operating hours during at least four QSEs as required herein. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

25.   <u>Monthly Visual Observations</u>. During the Term, appropriately trained personnel shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26.   <u>Visual Observations Records</u>. Defendants shall maintain observation records, including photographs, where applicable, to document compliance with

16

Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing. Defendants shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

27.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a.    <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facility;

b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. <u>Sampling Training</u>. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. <u>Visual Observation Training</u>. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. <u>Non-Storm Water Discharge Training</u>. Defendants shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees (i.e., employees that were not employed as of the Effective Date) shall participate in the Training Program within thirty (30) days of their hiring date; and

h. <u>Records</u>. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper

with a copy of these records within fourteen (14) days of receipt of a written request.

28. <u>SWPPP Revisions</u>.

    a.    <u>Initial SWPPP Revisions</u>. Defendants shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPPs shall contain, at a minimum, the following elements:

         i.    A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

         ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

         iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree and further clarification of the frequency use of the Billy Goat sweeper;

         iv.    A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas, and flows (including, without limitation, correcting those

leading to S-1), and subsurface conveyances to show discharge locations to San Jose Creek from all inlets (S-1, S-2, and those not sampled);

    v.    A MIP as required by sections XI and X.I of the General Permit; and

    vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.

    b.    Additional SWPPP Revisions.

    i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    ii.    Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

20

      c.    <u>Review of SWPPP</u>.  For any SWPPP updates submitted by
Defendant, LA Waterkeeper shall have thirty (30) days upon
receipt of the complete, updated SWPPP to provide Defendants
with comments. Within thirty (30) days of receiving LA
Waterkeeper's comments and proposed changes to the SWPPP,
Defendants shall consider each of the comments and proposed
changes and either accept them or justify in writing why a change
is not incorporated. The Parties agree to work in good faith to
resolve any disputes with respect to the SWPPP, and any
remaining disputes will be resolved through timely initiation of
the dispute resolution procedures in Section IV below. Following
its incorporation of proposed modification or additions (if any)
into each revised SWPPP, Defendants shall upload the revised
SWPPP to SMARTS.

**E.**    **COMPLIANCE MONITORING AND REPORTING**

29.    LA Waterkeeper may conduct one annual site inspection ("Site
Inspection") every year during the life of this Consent Decree for the purpose of
ensuring compliance with this Consent Decree and the General Permit. In the event of
a dispute regarding Defendants' compliance with this Consent Decree, and provided a
Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to
meet and confer regarding one additional Site Inspection at Plaintiff's request. Any
Site Inspection shall occur during normal business hours, and LA Waterkeeper will
provide Defendants with notice with at least twenty-four (24) hours' notice prior to a
Site Inspection in anticipation of wet weather and seventy-two (72) hours' notice
during dry weather. For Site Inspections in anticipation of wet weather, LA
Waterkeeper must ensure that the twenty-four hours' notice includes at least one

business day.[5] For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendants shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendants' representative. LA Waterkeeper shall be permitted to direct Defendants to take photographs or video recording during any Site Inspection to be provided to La Waterkeeper afterwards.

30.    <u>Document Provision</u>. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendants shall copy or provide notice to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, of all compliance documents, monitoring and/or sampling data, written communications and/or correspondences (except automated or non-substantive replies and confirmations), or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. If providing notice, Defendants shall give such notice within three (3) business days of making such submission. Where Defendants are required to upload documents directly to SMARTS, Defendants may send

---

[5] For example, LA Waterkeeper may not provide notice to Defendants on a Sunday and then expect to conduct a Site Inspection on Monday.

copies to LA Waterkeeper or notify LA Waterkeeper of the submission to SMARTS within two (2) business days of the submission.

b.   Within ten (10) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, any compliance document, inspection report, written communication and/or correspondence (except automated or non-substantive replies and confirmations), or any document related to storm water quality at the Facility received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

31.    <u>Compliance Monitoring</u>. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree by paying Seven Thousand Dollars ($7,000.00) within thirty (30) days of the Entry Date.  Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the San Gabriel River Watershed, Defendants shall make a payment totaling Thirty Thousand Dollars ($30,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit

1    payment as required under this Paragraph will constitute breach of the Consent

2    Decree.

3        33.    LA Waterkeeper's Fees and Costs. Defendants shall pay a total of

4    Seventy Five Thousand Five Hundred Dollars ($75,500.00) to LA Waterkeeper to

5    partially reimburse Plaintiff for their investigation fees and costs, expert/consultant

6    fees and costs, reasonable attorneys' fees, and other costs incurred as a result of

7    investigating and filing the lawsuit, and negotiating a resolution of this matter within

8    thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra

9    Aeris Law Group and delivered by overnight carrier to 8 Rio Vista Avenue, Oakland,

10   CA 94611. Failure to submit payment as required under this Paragraph will constitute

11   breach of the Consent Decree.

12       34.    Missed Deadlines. In the event that Defendants fails to submit to LA

13   Waterkeeper any payment, document, report, or communication required by this

14   Consent Decree, LA Waterkeeper shall provide written notice to Defendants of any

15   missed deadline by electronic mail to the individual(s) designated below at Paragraph

16   57. Defendants shall then have five (5) business days from the receipt of such notice

17   to cure the alleged delinquency. If the event Defendants fails to cure the alleged

18   delinquency within five (5) business days of its receipt of LA Waterkeeper's notice,

19   Defendants shall pay a stipulated payment of Two Hundred Fifty Dollars ($250) per

20   each day after the notice and cure period that the delinquency continues. Such

21   stipulated payments shall be made by check payable to: Rose Foundation for

22   Communities and the Environment, and such funds shall be used for the sole purpose

23   of funding environmentally beneficial projects, as described in Paragraph 32.

24   Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite

25   102, Oakland, CA 94607. Defendants agree to make the stipulated payment within

26   fourteen (14) days after the deadline to cure the event that precipitated the stipulated

27   payment liability.

28

35.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 7% per year (0.583% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue monthly on any outstanding balance until Defendants are current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to the Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

36.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

37.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

38.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §

1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

39.    <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers, directors and employees release Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, corporate affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.    <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    <u>Future Administrative Proceedings</u>. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

42.    Waiver of California Civil Code § 1542. Upon the Effective Date of this Agreement, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

While a Party may assert that California Civil Code section 1542 applies to general releases only, and that the releases herein are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the Notice Letter and/or the Complaint, up to and including the Termination Date of this Agreement

## VI.    MISCELLANEOUS PROVISIONS

43.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.    Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

48.    Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.    Choice of Law. The laws of the United States shall govern this Consent Decree.

51.    Diligence. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.    Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendants is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

56.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.   <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Golden West Packaging Group |
| Benjamin Harris | Ron Ortiz |
| Erina Kwon | Jesus Ortiz |
| Madeleine Siegel | 15250 Don Julian Rd |
| 360 E. 2nd St., Suite 250 | City of Industry, CA 91745 |
| Los Angeles, CA 90012 | ron.ortiz@goldenwestpackaging.com |
| Email: ben@lawaterkeeper.org | jesus.ortiz@goldenwestpackaging.com |
| Email: erina@lawaterkeeper.org | Phone: (626) 726-0617 |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |
| | |
| With copies to: | With copies to: |
| Anthony M. Barnes | Michael N. Mills |
| Email: amb@atalawgroup.com | Stoel Rives LLP |
| 8 Rio Vista Ave. | 500 Capitol Mall, Ste 1600 |
| Oakland, CA 94611 | Sacramento, CA 95814 |
| T: 917-371-8293 | Michael.mills@stoel.com |
| | (916) 319-4642 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as

inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2025          By: _____
                                            Bruce Reznik
                                            Executive Director
                                            Los Angeles Waterkeeper

Dated: _____, 2025          By: _____
                                            Brian McDonnell
                                            Chief Financial Officer
                                            Golden West Packaging Group LLC

Dated: _____, 2025          By: _____
                                            Brian McDonnell
                                            Chief Financial Officer
                                            Fleetwood Fibre LLC

APPROVED AS TO FORM

                                      AQUA TERRA AERIS LAW GROUP

Dated: _____, 2025          By: _____
                                            Anthony M. Barnes
                                            Attorney for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Los Angeles Waterkeeper

STOEL RIVES LLP

Dated: _____, 2025        By: _____
                                         Michael N. Mills
                                         Attorney for Defendants
                                         Fleetwood Fibre LLC and
                                         Golden West Packaging Group LLC

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

     Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: _____5/14/25_____        CENTRAL DISTRICT OF CALIFORNIA

*Cynthia Valenzuela*

HONORABLE CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE